```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ x
CECIL DAVIS,                                           :
                                                       :    **MEMORANDUM AND ORDER**
                               Plaintiff,              :
                                                       :    06-CV-3643 (DLI)(JO)
              -against-                                :
                                                       :
THE METROPOLITAN                                       :
TRANSPORTATION AUTHORITY, and                          :
DETECTIVE PATRICK INZINNA,                             :
DETECTIVE DOUGLAS RUCANO,                              :
POLICE OFFICER TROY PETERMAN,                          :
POLICE OFFICER JAMES CHIRILLO,                         :
POLICE OFFICER NATHANIEL                               :
GUERRA, and POLICE OFFICER ERIC                        :
MOORE, individually and in their                       :
respective official capacities,                        :
                                                       :
                               Defendants.             :
------------------------------------------------------ x
```

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Cecil Davis brought this action pursuant to 42 U.S.C. § 1983 against the New York Metropolitan Transportation Authority ("MTA"), MTA Detectives Patrick Inzinna and Douglas Rucano in their official and individual capacities, and MTA Police Officers Troy Peterman, James Chirrillo, Nathanael Guerra, and Eric Moore in their official and individual capacities (collectively, the "individual defendants"). Plaintiff contends that defendants' use of a computerized photo array to identify him as the suspect of an alleged crime violated the Fourteenth Amendment's Equal Protection clause. Plaintiff also brings claims under § 1983 and the Fourth Amendment for malicious prosecution and false arrest/imprisonment, contending that the individual defendants lacked probable cause when they arrested, imprisoned, and arraigned him. For the reasons set forth below, defendants' motion for summary judgment is granted, and this action is dismissed in its entirety.

**I.     Background**

On April 13, 2004, Estelle LaRoche reported that she had been robbed and sexually assaulted at the Queens Village station of the Long Island Railroad. Defendants MTA Detectives Rucano and Inzinna responded to the report. After canvassing the Queens Village station and finding nothing, they arranged to have LaRoche come to the New York City Police Department's ("NYPD") 105th Precinct to view photographs of individuals fitting her description of the alleged assailant. (Rucano Dep. 26.)

According to the deposition of NYPD Detective William Davis,[1] the device used to display these photographs was known as a Photo Imaging Machine ("PIM"), and was operated in the following manner. Based on the victim's description of the perpetrator, the PIM operator would enter such physical characteristics as race, gender, approximate age, height, weight, hair and eye color, hair style, facial hair, and deformities into a computer terminal. (*See* William Davis Dep. (Docket Entry No. 34-7) 12.) Generally, a more specific description would yield fewer matches from the PIM database. This database consisted of "everybody arrested in New York City" since the PIM came into use, in 1996 or 1997. (*Id.* at 14.) The PIM computer monitor displayed six photographs at a time of people matching the physical characteristics entered into the system. (*Id.* at 15.) The photographs were not sorted by the type of offense committed by the individuals depicted. The victim would view the pictures as they were displayed, and notify the accompanying officers if s/he saw the person s/he believed was the perpetrator. If the victim so indicated, the operator would print out a photo array, consisting of the individual depicted and five similar photographs, chosen by the operator, depicting different individuals. (*Id.* at 17–18.)

---

[1] Detective Davis, who worked at the 105th Precinct at the time and often provided PIM access to MTA police officers who did have their own PIM, is not a party to the instant action.

If the victim again indentified the person s/he believed to be the perpetrator, s/he would then circle the number corresponding with the picture, and sign the photo array. (*Id.* at 19.)

LaRoche described her alleged attacker to Detectives Inzinna and Rucano as a black male, clean shaven with a "corn-row" hairstyle, approximately fifty years of age and five feet eight inches in height, wearing a green jacket, dark pants, and a backwards green baseball hat. (Inzinna Dep. 23–24; Aff. of Robert Siegel in Supp. of Mot., Ex. O.) After viewing a number of photographs,[2] LaRoche identified plaintiff Cecil Davis' picture from the PIM database. She again selected his picture from the printed photo array. (Rucano Dep. 51; *see also* Aff. of Robert Siegel in Supp. of Mot., Ex. P.)

Rucano and Inzinna, accompanied by defendant Police Officers Peterman, Chirrillo, Guerra, and Moore, then proceeded to plaintiff's home where they questioned and handcuffed him, and then brought him to the MTA Police Department's Jamaica Precinct. (Rucano Dep. 73–74.) There, plaintiff was placed in a holding cell to wait for a line-up. (*Id.* at 77.) The line-up was conducted early in the morning of April 14, 2004, in the presence of a Queens County assistant district attorney. Plaintiff participated in the line-up with five other individuals ("fillers"), all of whom fit plaintiff's general physical description. Plaintiff and the fillers each wore identical shirts and hats. (Inzinna Dep. 109–15.) LaRoche identified plaintiff from this line-up. (Rucano Dep. 83.) Plaintiff was then fingerprinted, photographed, and sent to Queens Central Booking, where he was formally charged with robbery and sexual assault. (*Id.* at 85.)

Following his arraignment before a judge, plaintiff was transported to the detention center on Rikers Island and held for approximately six weeks until he posted bail. (Pl.'s Dep. 146–47.) On June 28, 2005, all charges against plaintiff were dropped; the record is unclear as to

---

[2] It is unclear from the record how many photographs LaRoche viewed before identifying plaintiff.

why. (*Id.* at 162; Am. Compl. 6.) On August 11, 2006, plaintiff filed the instant § 1983 action, seeking compensatory and punitive damages. Plaintiff amended his complaint on October 26, 2006.[3] Defendants move for summary judgment on the grounds that plaintiff is unable to make a prima facie case to support a § 1983 claim against either the MTA or the individual defendants. Defendants also contend that they had probable cause to arrest, imprison and prosecute plaintiff.

**II. Discussion**

    **A. Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "When no rational jury could find in favor of the nonmoving party because

---

[3] In his original complaint, plaintiff also brought a claim for "malicious abuse of process." This claim was absent from plaintiff's amended complaint, filed three months later. (*Compare* Compl. 9, *with* Am. Compl.) As the original complaint was replaced by its amendment, the court need not address this claim.

the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Res. Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

### B. Section 1983

Section 1983 "does not itself create or establish any federally protected right." MARTIN A. SCHWARTZ & KATHRYN R. URBONYA, SECTION 1983 LITIGATION 7 (2d ed. 2008); *see also Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). It does, however, provide a cause of action to those wronged by a "misuse of state power . . . made possible . . . because the wrongdoer is clothed with the authority of state law." *United States v. Giordano*, 442 F.3d 30, 42–43 (2d Cir. 2006) (citations and internal quotations omitted). Thus, "[t]o state a claim against an individual under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Meyer v. William Floyd Union Free School Dist.*, 2009 WL 3327208, at *4 (E.D.N.Y. Sept. 30, 2009) (citations and internal quotations omitted); *see also Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "In addition, if the plaintiff is seeking to establish municipal liability, [he] must show that the deprivation of . . . federal right was attributable to the enforcement of a municipal custom or policy." SCHWARTZ & URBONYA at 6; *see also Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978); *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992).

### C. Liability of Individual Defendants

#### 1. Equal Protection Claim

Defendants do not contest that they were acting under color of state law at all relevant times. However, the claims against the individual defendants in their official capacities are

essentially suits against the municipality by whom they are employed. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). As plaintiff has also brought suit directly against the MTA, the suits against the individual defendants in their official capacities are "duplicative or redundant" and are therefore dismissed. *See* MARTIN A. SCHWARTZ & KATHRYN R. URBONYA, SECTION 1983 LITIGATION 96 (2d ed. 2008) (collecting cases).

Defendants argue that plaintiff is unable to show that he was deprived of his constitutional right to equal protection under the law. (*See* Defs.' Mot. 5–6.) For the reasons discussed in Part II.D, *infra*, the court agrees, and grants judgment to the individual defendants on this claim as a matter of law.

### 2. False Arrest/Imprisonment[4]

When evaluating claims of false arrest/imprisonment, the court applies the law of the state in which the underlying events occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007); *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). Under New York law, a finding of probable cause will defeat both claims. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 78–79 (2d Cir. 2008) (citations omitted); *McClellan*, 439 F.3d at 145 (citation omitted); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *Zanghi v. Inc. Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985) (citation omitted).

"Probable cause exists when [one] ha[s] knowledge of, or reasonable trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Williams*, 535 F.3d at 79 (citations and internal quotation marks omitted). "Probable cause

---

[4] The court will treat "false arrest" and "false imprisonment" as a single claim. *See Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."); *see also Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007).

6

requires only a probability or substantial chance of criminal activity . . . ." *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990) (citing *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). An alleged crime victim's identification of a suspect from a photo array establishes probable cause to arrest that suspect as a matter of law. *Rush v. Astacio*, 159 F.3d 1348, 1348 (2d Cir. 1998); *see also Carlisle v. City of Yonkers*, 104 F.3d 352, 352 (2d Cir. 1996) (victim's identification of suspect from photo array sufficient to establish probable cause absent police impropriety or proof that array was improperly suggestive); *Mayer v. Moeykens*, 494 F.2d 855, 858 n.2 (2d Cir. 1974) ("the actual identification of [plaintiff/suspect] by the victim through photographs goes beyond mere suspicion and would . . . be sufficient to warrant a prudent man in believing that the [plaintiff/suspect] had committed . . . an offense") (citation and internal quotation marks omitted).

Here, LaRoche identified plaintiff from a photo array, thus establishing probable cause to arrest and detain him. *See Rush*, 159 F.3d at 1348; *Mayer*, 494 F.2d at 858 n.2. Plaintiff has not alleged that this photo array was improperly suggestive, or that the individual defendants committed any malfeasance. *See Carlisle*, 104 F.3d at 352. Instead, he argues against the existence of probable cause on three policy grounds. First, he contends that the MTA detectives had an affirmative duty to "inquire of the victim how many photos she viewed, to advise the victim of the fullness of the database and because of the fullness of the database to have her continue looking." (Pl.'s Mem. in Opp'n 7.) Other district courts within the Second Circuit have rejected such heightened duty arguments. *See, e.g.*, *Landy v. Irizarry*, 884 F. Supp. 788, 795 n.10 (S.D.N.Y. 1995) ("[O]nce probable cause is established there is no affirmative duty to weigh conflicting versions of the alleged offense presented by the suspect . . . .") (citation and internal quotations marks omitted); *Dirienzo v. United States*, 690 F. Supp. 1149, 1157 (D. Conn. 1988)

("Once probable cause was established, the [law enforcement officers'] authority to act is established and their conduct cannot be measured by an affirmative duty to exhaust all possible avenues of investigation."). This court follows suit, finding such precedent strongly persuasive.

Plaintiff also argues against probable cause on the ground that the PIM did not display the type of crime committed by the depicted individuals. Thus, LaRoche was unaware when viewing plaintiff's picture that his previous arrest was for domestic violence, and not robbery—the crime of which she was a victim. (*See* Pl.'s Mem. in Opp'n 7.) The court finds this point irrelevant. As noted by defendants, the assumption that criminals only commit one type of crime is deeply flawed. (*See* Defs.' Reply Mem. 8.) Plaintiff's policy argument ignores the possibility of, for example, spousal abusers graduating to robbery later in their criminal careers.

Finally, plaintiff argues against the existence of probable cause on the ground that LaRoche failed to examine the PIM's entire photo database before positively identifying him, which was necessary "to give true fairness to the process." (Pl.'s Mem. in Opp'n 6.) In other words, plaintiff proposes that crime victims be forced to view all photographs in a given police database—or perhaps *all* police databases—before having their eyewitness identifications credited by investigating officers. The court declines this invitation, as it is unclear that such a rule would increase identification accuracy.

### 3. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). New York in turn requires a plaintiff to show "that a

proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor."

The court need not reach the question of whether defendants violated plaintiff's Fourth Amendment rights, as the malicious prosecution claim fails with respect to the malice and probable cause elements. Regarding the former, a defendant must have "commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citation and internal quotation marks omitted). Here, plaintiff merely recites the malice element and offers no evidence to show that defendants were motivated by anything "wrong or improper" at any stage of their investigation. (*See* Am. Compl. 8–9); *see Lowth*, 82 F.3d at 573. Viewing all facts in the light most favorable to plaintiff, the court may conclude that defendants failed to check his proffered alibis or credit his claims of innocence at the time of his arrest. However, as discussed in Part II.C.2, *supra*, they were under no affirmative duty to do so, probable cause having already been established at that time by LaRoche's identification of plaintiff in the photo array. *See Rush*, 159 F.3d at 1348.

"If probable cause exists at the time of arrest, it is presumed to continue to the time of prosecution unless undermined by new exculpatory facts." *Wong v. Yoo*, 649 F. Supp. 2d 34, 66–67 (E.D.N.Y. 2009) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143–44 (2d Cir. 2003)). Here, to the extent probable cause was later "undermined by new exculpatory facts," plaintiff himself acknowledges that his prosecution was terminated after these facts came to light. (Pl.'s Dep. 2; *see also* Pl.'s Mem. in Opp'n 10.) Indeed, defendants' deposition testimony reveals—and plaintiff does not contest—that their collective role in the prosecution ended when plaintiff was arraigned, prior to any investigation that might have uncovered any exculpatory evidence. *Cf.*

*Russo v. City of Bridgeport*, 479 F.3d 196, 209–10 (2d Cir. 2007) (involving, by contrast, law enforcement officer who deliberately failed to turn over exculpatory evidence).

In sum, no reasonable jury could find that defendants' mere arrest and detention—without more—of the man identified as the perpetrator by the crime victim, equated to malice on defendants' part. Nor could a reasonable jury conclude that these same defendants were ever aware of any exculpatory evidence that might have undermined the probable cause that unquestionably existed during April 13–14, 2004. For these reasons, the individual defendants are entitled to judgment on the malicious prosecution claim as a matter of law.

### D. Liability of the MTA

Initially, it should be noted that municipalities, municipal agencies, and public benefit corporations such as the MTA are immune from liability for punitive damages as any award "would be payable from taxpayer funds" and, therefore, would "not further the deterrent and punishment goals of punitive damages." SCHWARTZ & URBONYA 99 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)); *see also Munafo v. Metro. Transp. Auth.*, 2003 WL 21799913, at *22 (E.D.N.Y. Jan. 22, 2003). Accordingly, all subsequent analysis with respect to the MTA concerns only the possible award of compensatory damages.

"*Monell* established that a municipality is subject to liability under § 1983 only when [a] violation of [a] plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker." SCHWARTZ & URBONYA 98; *see also Lewis v. City of New York*, 2009 WL 935955, at *4 (E.D.N.Y. Mar. 31, 2009). *See generally Monell*, 436 U.S. 658. The threshold question is whether there was a denial of a constitutional right. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

Plaintiff contends that "the municipality's use of the photo imaging machine without articulating to the alleged victim the nature and extent of what she was viewing" constitutes a denial of a constitutional right. (Pl.'s Mem. in Opp'n 12.) Specifically, plaintiff points to the fact that LaRoche was not informed that she was "looking at the entire New York City arrest database with rapists, robbers, car thieves, wife beaters, burglars and the like . . . ." (*Id.* at 12–13.) The result of this omission, plaintiff argues, is that LaRoche and other viewers of the PIM lacked "sufficient information that would have permitted [them] to make an intelligent selection of the possible candidates . . . ." (*Id.* at 13.) This "den[ies] African-Americans equal protection and treatment under the law" in violation of the Fourteenth Amendment. (*See id.*; *see also* Am. Compl. 7–8.)

The court is simply unable to follow plaintiff—who cites no authority for this conclusory statement—on this inferential leap. "The Equal Protection Clause requires state actors to treat similarly situated people alike." *Grandal v. City of New York*, 966 F. Supp. 197, 203 (S.D.N.Y. 1997) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)). However, plaintiff has failed to allege any manner in which he was treated differently from similarly-situated persons of another race. *See Grandal*, 966 F. Supp. at 203. Furthermore, plaintiff has failed to allege that defendants intentionally discriminated against him, another requirement for bringing a race-based claim under the Equal Protection Clause. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 337–38 (2d Cir. 2000); *see also Washington v. Davis*, 426 U.S. 229, 239–41 (1976).

Plaintiff appears to take issue with the fact that race is one of the physical characteristics that may be put into the PIM. However, such a practice is legitimate, so long as the police are, as were the defendant officers here, "searching for a particular perpetrator" and not "initiat[ing] an investigation of a citizen based solely upon that citizen's race." *See Brown*, 221 F.3d at 337–38

11

(involving "description that included race as one of several elements" and noting that policy of "investigat[ing] crimes by interviewing the victim, getting a description of the assailant, and seeking out persons who matched that description" was "race-neutral on its face"). To the extent plaintiff is arguing that use of the PIM is a facially-neutral policy that nevertheless has an adverse effect on African-Americans, he still fails to allege that such a policy was "motivated by discriminatory animus." *Id.* at 337 (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)).

Plaintiff cannot show that a federally-protected right was violated. Accordingly, the MTA is entitled to judgment as a matter of law on the equal protection claim, and the court need not reach the issue of whether the use of the PIM was widespread enough to constitute a custom or practice. *See* SCHWARTZ & URBONYA 98; *see also Sorlucco*, 971 F.2d at 870. Regarding the false arrest/imprisonment and malicious prosecution claims, the same probable cause analysis that shields the individual defendants also protects the MTA. *See* Part II.C.2–3, *supra*.

The court is sympathetic to the extent that plaintiff was imprisoned for a crime he may not have committed. However, such misfortune and resulting hardship alone do not give rise to an actionable § 1983 claim. As the United States Supreme Court has stated, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

## III. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted, and this action is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
March 22, 2010

/s/
DORA L. IRIZARRY
United States District Judge